These cases were consolidated on appeal because their resolution is dependent on the answer to the same question: Does a non-tenured teacher have a cause of action against an employer board of education for failing to follow its own teacher evaluation policy in deciding not to reemploy that teacher for another year? We find that such an action may be maintained, and we, therefore, reverse the judgment of the lower court.
Appellant Allen Graham was employed as a non-tenured teacher by the Jefferson County Board of Education for two years. During the second year, Graham was informed that he would not be reemployed for a third year. Graham alleges that Haywood Atkinson, the principal of Hueytown High School, where Graham taught, failed to perform an evaluation of Graham as required by Board of Education policy. Rather, it is alleged, Atkinson delegated that responsibility to the head football coach of the school. Graham alleges that in further non-compliance with Board policy, he was not informed in advance of the principal's recommendation that Graham not be reemployed. He also alleges that he was not evaluated in the spring based on fall assessments, as required by the Board policy.
Consequently, Graham filed suit against the Board of Education and Atkinson, *Page 1065 
alleging breach of contract and violation of his constitutional rights, in that the Board failed to follow the procedures outlined in Board policy No. 533.6 regarding the assessment and evaluation of teachers. The trial court granted a motion to dismiss filed by the defendants.
Appellant Leann Belcher was employed as a non-tenured teacher at Hewitt-Trussville High School by the Jefferson County Board of Education for three years. During her third year, Belcher was informed that she would not be reemployed for a fourth year. Belcher sued the Board of Education and Kenneth Abbott, the principal of Hewitt-Trussville High School, for breach of contract, negligent evaluation, and violation of her constitutional rights. Like Graham, Belcher alleged that the Board failed to comply with its own policy No. 533.6 in deciding not to reemploy her. Belcher alleges specific non-compliance in that: 1) she was not evaluated in the spring based on fall assessments, 2) an observation form was completed respecting Belcher but not promptly shown to her, and 3) she was not informed of Abbott's recommendation that she not be reemployed. The trial court dismissed Belcher's complaint for failure to state a claim upon which relief could be granted.
Graham and Belcher here appeal the dismissals of their suits. The issue presented to us for review is whether a non-tenured teacher has a cause of action against an employer board of education for failing to follow its own teacher evaluation policies in deciding not to reemploy that teacher for another year. A threshhold question which must first be answered is whether the board of education, even if it is bound to follow its own evaluation policy, is nevertheless immune from such a suit.
The sovereign immunity of the State is provided for in our Constitution as follows: "[T]he State of Alabama shall never be made a defendant in any court of law or equity." Ala. Const. art. I, § 14. In Hutt v. Etowah County Board of Education,454 So.2d 973 (Ala. 1984), we reaffirmed the established position that county boards of education are arms of the State as far as immunity is concerned:
 County boards of education are not agencies of the counties, but local agencies of the state, charged by the legislature with the task of supervising public education within the counties. See §§ 16-8-8, -9, Code 1975; Clark v. Jefferson County Board of Education, 410 So.2d 23, 27 (Ala. 1982). They execute a state function — not a county function — namely, education. Sims v. Etowah County Board of Education, 337 So.2d at 1317 (Faulkner, J., dissenting), citing
Alabama Constitution, Art. 12 § 256. Therefore, they partake of the state's immunity from suit to the extent that the legislature authorizes. Sims v. Etowah County Board of Education, 337 So.2d at 1316; Enterprise City Board of Education, 348 So.2d at 783. [Footnote omitted.]
454 So.2d at 974. In Hutt we said the trial judge was correct in granting summary judgment in favor of a board of education accused of failure to furnish safe gymnasium facilities, because boards of education are immune from such tort suits.
They are not immune from all suits, however. Section 16-8-40, Code 1975, gives county boards of education the right to sue and contract. In Sims v. Etowah County Board of Education,337 So.2d 1310 (Ala. 1976), this Court affirmed a dismissal by the lower court of a tort claim of negligence, but reversed the dismissal of the breach of implied contract counts. The Court cited the board's statutory right to sue and contract, supra, and stated as follows:
 This right to sue carries with it the implied right to be sued, Kimmons v. Jefferson County Board of Education, 204 Ala. 384, 85 So. 774 (1920), but only upon such matters as are within the scope of its corporate power. Morgan et al. v. Cherokee County Board of Education, 257 Ala. 201, 58 So.2d 134
(1952). Thus our cases recognize that a county board of education may be sued on its contracts. *Page 1066 
337 So.2d at 1313. The Court concluded by saying this:
 Having found that a county board of education has statutory authority to make a contractual undertaking with regard to the safety of premises it utilizes in conducting athletic contests which the public may view upon the payment of consideration, we must hold that the trial court erred in dismissing the contract counts.
337 So.2d at 1314. Therefore, in the present case, the Jefferson County Board of Education is not automatically immune to a breach of contract action.
In addition to such contract suits against the Board itself, individual members of boards of education can be subject to lawsuits, and this vulnerability is not limited to contract actions. In Hickman v. Dothan City Board of Education,421 So.2d 1257 (Ala. 1982), we affirmed the dismissal of a complaint against individual members of a board of education for negligent and false evaluation. The Court, however, citedDeStafney v. University of Alabama, 413 So.2d 391 (Ala. 1981) (on rehearing), which states as follows:
 [A] claim for personal injury based upon the alleged negligent conduct of a State employee, even when committed in the line and scope of employment, is not within the ambit of § 14's protection. Such a claim, by virtue of its nature and the relief demanded, in no way seeks to circumvent the prohibition of § 14. Any state interest affected by the suit is far too incidental to supply the requisite nexus for extension of constitutional immunity to the individual employee defendant. . . .
 This is not to say, however, that every act or performance of duty by a state official or employee, by virtue of its characterization as negligence, necessarily falls outside the immunity doctrine. Even absent the requisite identity between the State and the state official or employee defendant to invoke absolute immunity, the Restatement's doctrine of substantive immunity may yet be invoked if the official or employee 1) is engaged in the exercise of a discretionary function; 2) is privileged and does not exceed or abuse the privilege; or 3) is not negligent in the performance of his responsibility.
413 So.2d at 395. In Hickman, although we recognized the limits of immunity, this Court nonetheless found that any alleged negligent conduct was protected by sovereign immunity as a discretionary function. We stated:
 We have strained at each allegation, and we are unable to find language which expresses a tort claim against those defendants sued in their individual capacities. All allegations come within the ambit of a discretionary function. Even when considered most liberally, they provide no basis upon which to found liability for a personal claim of injury. They lack the requisite element of a claim in tort; hence they fall short. Therefore, we affirm the trial court's dismissal as to plaintiff's action against the defendants sued in their individual capacities.
421 So.2d at 1260. In the present case, in order for Belcher and Graham to state a negligence claim, they would have to allege negligent behavior not falling within the realm of discretionary function.
Having addressed the immunity issue, we must now determine whether the sua sponte adoption by a board of education of a specific written policy regarding teacher evaluation affords any enforceable legal rights to the teachers governed thereby.
Non-tenured teachers may be reemployed or terminated at the discretion of the board of education. This Court has stated the following in this regard:
 The Alabama Legislature, by enacting the Teacher Tenure Law, has created two classes of teachers in the public schools of this state, those which have a continuing service status (tenured teachers) and those which do not have (probationary or nontenured teachers). The employing boards of education may not summarily terminate a tenured teacher, but may summarily terminate a probationary *Page 1067 
or nontenured teacher. Title 52, § 351, et seq. See also State v. Board of Education of Fairfield, 252 Ala. 254, 40 So.2d 689 (1949).
Foster v. Blount County Board of Education, 340 So.2d 751 (Ala. 1976). In Foster, a non-tenured female teacher requested a maternity leave and was instead not renewed for another year's employment. She brought suit, alleging violation of her due process rights. The Court said this:
 Under Alabama law, it is not disputed that a nontenured teacher has no right, statutory or otherwise, to be re-employed. However, the nonrenewal of a teacher's contract may entitle him to procedural due process if the reasons for the nonrenewal stigmatize him, or injure his prospects for future employment. It is also conceded that the Alabama statutes do not require the boards of education to state reasons for the nonrenewal of a nontenured teacher's contract of employment. Of course, the failure to renew one's contract cannot be predicated on the exercise by that person of his constitutional rights. Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).
340 So.2d at 752. The Court affirmed a denial of reinstatement, stating that the teacher failed to prove either that her termination was because she was exercising some Constitutional right, or that she had a claim or entitlement to reemployment.
In the present cases, neither Belcher nor Graham claims to have been terminated because of the exercise of a constitutional right. Their due process arguments would necessarily be based on a claim or entitlement theory, based on the adoption by the Board of Education of an evaluation policy. Similarly, their breach of contract and negligent evaluation claims are based on the Board's failure to follow its own self-imposed policy.
In Walker County Board of Education v. Walker CountyEducation Association, 431 So.2d 948 (Ala. 1983), a board of education brought a declaratory judgment action seeking a determination that policies it had adopted regarding employment of members of the Walker County Education Association were not legally binding. We affirmed the trial court's summary judgment against the Board of Education, stating as follows:
 Under the Alabama Code, responsibility for the "general administration and supervision of the public schools [and] of the educational interests of each county" is vested in the county board of education. § 16-8-8, Code 1975. In discharging this responsibility, each board is required by § 16-8-10 to "determine and establish a written educational policy for the county and [to] prescribe rules and regulations for the conduct and management of the schools." See, Mobile County Board of School Commissioners v. Mobile County Education Association, 394 So.2d 922 (Ala. 1981).
. . . .
 . . . The trial court found, and properly so, that the policies were unilaterally adopted by the Board after conferring with and receiving recommendations of representatives of the employee association, WCEA. Those policies were then designated as "The Official Board Policy" and were publicly filed in the State Superintendent's office as provided for by § 16-8-10.
431 So.2d at 953. The Court then concluded in this way:
 Section 16-8-10 only obligates the Board to meet
and consult with those persons set out in the statute; it does not obligate the Board to reach any agreement, accept any proposals or negotiate any matter if it does not wish to do so. In fact, the Board was free to reject the proposals submitted to it by the WCEA committee for any reason or for no reason, without committing an unfair labor practice or subjecting itself to any sanction. However, once the Board adopts a policy pursuant to statutory mandate the same remains in full force and effect to the extent it does not violate Alabama law until modified or amended by the *Page 1068 
Board in accord with the procedure set forth in § 16-8-10[.]
431 So.2d at 954. Although Walker County did not directly address a teacher's suit to enforce such Board policies, it clearly states that a board of education is bound to comply with its adopted policies.
In Vitarelli v. Seaton, 359 U.S. 535, 79 S.Ct. 968,3 L.Ed.2d 1012 (1959), the Supreme Court addressed a situation in which an employee of the Department of the Interior was dismissed without compliance with Department policy for a "security" type discharge. An executive order and a statute provided procedures for dismissals on security grounds. The Supreme Court had previously held that employees in positions not designated as "sensitive" could not be discharged under the procedures provided for in that executive order and statute, if those procedures provided lesser procedural protections than those to which the "nonsensitive" employee would normally be entitled. The Secretary of the Interior also promulgated his own regulations dealing with security dismissals.
Vitarelli was an employee in a "nonsensitive" position from which he could have been summarily discharged. The Secretary, however, without need, stated that Vitarelli was being discharged for security reasons. The Court held:
 Since, however, the Secretary gratuitously decided to give a reason, and that reason was national security, he was obligated to conform to the procedural standards he had formulated in Order No. 2738 for the dismissal of employees on security grounds. Service v. Dulles, 354 U.S. 363 [77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957)]. That Order on its face applies to all
security discharges in the Department of the Interior, including such discharges of Schedule A employees. Cole v. Young [351 U.S. 536, 76 S.Ct. 861, 100 L.Ed. 1396 (1956)] established that the Act of August 26, 1950, did not permit the discharge of nonsensitive employees pursuant to procedures authorized by that Act if those procedures were more summary than those to which the employee would have been entitled by virtue of any pre-existing statute or regulation. That decision cannot, however, justify noncompliance by the Secretary with regulations promulgated by him in the departmental Order, which as to petitioner afford greater procedural protections in the case of a dismissal stated to be for security reasons than in the case of dismissal without any statement of reasons. Having chosen to proceed against petitioner on security grounds, the Secretary here, as in Service, was bound by the regulations which he himself had promulgated for dealing with such cases, even though without such regulations he could have discharged petitioner summarily. [Emphasis added.]
359 U.S. 539-540, 79 S.Ct. 972-973. In the present case, the Board of Education did not legally have to follow any particular evaluation policy absent its own self-imposed procedures. Having adopted a policy, however, the Board is bound to follow it. Walker County, supra.
The claims of Belcher and Graham were dismissed below for failure to state a claim upon which relief could be granted. Applying the above-discussed principles to this case, we hold that the appellants did not sufficiently allege the requisite elements of a due process claim. Foster, supra. Furthermore, we hold that the appellants' allegations of negligence fall within the ambit of discretionary functions and, thus, are barred by the sovereign immunity defense. Hickman, supra. Therefore, the dismissal of the tort and due process counts was proper.
On the other hand, we hold that the appellants have alleged a breach of contract claim upon which relief could be granted, on the basis of the Board of Education's adoption of an evaluation policy, and alleged subsequent non-compliance with that policy. Therefore, the dismissal of the contract claim was error.
For the above-stated reasons, the judgment of the trial court is affirmed in part and reversed in part and remanded. *Page 1069 
AFFIRMED IN PART; REVERSED IN PART AND REMANDED.
MADDOX, FAULKNER, JONES, ALMON, SHORES, EMBRY and BEATTY, JJ., concur.
TORBERT, C.J., concurs specially.