Albert E. LASSITER, Plaintiff–Appellant,

v.

ALABAMA A & M UNIVERSITY, BOARD OF TRUSTEES, Douglas Covington; Thomas Fuller; Herbert Gray; Robert T. Hughes; W. Troy Massey; Eddie Player, Defendants–Appellees.

No. 92–6295.

United States Court of Appeals, Eleventh Circuit.

Oct. 7, 1993.

Susan Williams Reeves, Birmingham, AL, David Blankenship, Huntsville, AL, for plaintiff-appellant.

Joe R. Whatley, Jr., Cooper, Mitch, Crawford, Kuykendall & Wharley, John C. Falkenberry, Birmingham, AL, for defendants-appellees.

Before FAY and KRAVITCH, Circuit Judges, and RONEY, Senior Circuit Judge.

RONEY, Senior Circuit Judge:

This suit involves the termination of plaintiff's employment as a vice-president of a state university. He alleges federal liberty and property interest deprivations under 42 U.S.C. section 1983, and a state law breach of contract claim. This Court previously reversed a summary judgment that had been entered for all the defendants: the Board of Trustees, Trustees, and the President, 861 F.2d 680. The district court, on remand, dismissed the University Board of Trustees and the "official capacity" defendants on Eleventh Amendment immunity grounds. It entered judgment as a matter of law for the "individual capacity" defendants on a Rule 50 motion based on qualified immunity. We affirm (1) the decision that the Eleventh Amendment shields the University Board of Trustees from suit in federal court, (2) the decision that the defendants sued in their official capacities are immune from liability for retroactive relief, and (3) the decision that the defendants sued in their individual capacities are entitled to judgment on the liberty interest claim. We reverse and remand for further proceedings (1) the decision that the official capacity defendants are immune from prospective relief on the property interest claim, and (2) the decision that the individual capacity defendants are entitled to qualified immunity on the property interest claim.

## Background

In April 1985, plaintiff Albert E. Lassiter was hired as the Vice-President of Business and Finance at Alabama Agricultural and Mechanical University (Alabama A & M). In June 1986, he was terminated. Lassiter brought an action in district court challenging the termination and seeking prospective and retroactive relief. He named as defendants Douglas Covington, individually and in his official capacity as then-President of Alabama A & M,[1] the Board of Trustees, and five members of the Board of Trustees in their individual and official capacities. The district court entered summary judgment against Lassiter. Finding that genuine issues of material fact remained concerning Lassiter's liberty and property interest claims and his breach of contract claim, we reversed and remanded for trial on the merits. *Lassiter v. Covington,* 861 F.2d 680 (11th Cir.1988) (*Lassiter I* ). On that appeal, neither Eleventh Amendment immunity nor qualified immunity was addressed by either party, the district court having entered summary judgment on the merits of the claims without regard to immunity from suit.

On remand, the district court entered a pretrial order dismissing the official capacity defendants and the Board of Trustees on Eleventh Amendment grounds. Upon completion of the presentation of Lassiter's evidence, the trial court granted the Rule 50 motion in favor of the individual capacity defendants on Lassiter's liberty interest claim and state law breach of contract claim. At the conclusion of the trial, the court granted the defendants' Rule 50 motion on Lassiter's property interest claim and entered a final judgment against Lassiter. Lassiter appeals from that judgment as it applies to all defendants except the Trustees in their official capacities.

## Eleventh Amendment Immunity

█ The Eleventh Amendment prohibits a federal court from exercising jurisdic-

---

1. Covington apparently no longer serves as the President of Alabama A & M. Pursuant to Rule 25 of the Federal Rules of Civil Procedure, Covington's successor is automatically substituted as a party to the official capacity claim against Covington when Covington ceases to hold office. Because the Court has not been informed of the name of Covington's successor, it will continue to refer to the party as "Covington in his official capacity."

tion over a lawsuit against a state, except where the state has consented to be sued or waived its immunity, or where Congress has overridden the state's immunity. *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 98–100, 104 S.Ct. 900, 906–08, 79 L.Ed.2d 67 (1984); *Quern v. Jordan,* 440 U.S. 332, 341, 99 S.Ct. 1139, 1145, 59 L.Ed.2d 358 (1979). None of the exceptions to the state's Eleventh Amendment immunity applies here.

■ Where the defendant is an entity other than the state, the suit may nonetheless be barred where the state is the "real party in interest." We have previously held that a state university in Alabama, as an arm of the state, is entitled to Eleventh Amendment immunity. *Harden v. Adams,* 760 F.2d 1158 (11th Cir.), *cert. denied,* 474 U.S. 1007, 106 S.Ct. 530, 88 L.Ed.2d 462 (1985). The district court correctly found that Lassiter's claims against the Board of Trustees of Alabama A & M are barred by the Eleventh Amendment.

■ To the extent that Lassiter seeks retroactive relief against Covington in his official capacity, the action is likewise barred by the Eleventh Amendment. Official capacity actions seeking damages are deemed to be against the entity of which the officer is an agent. *Kentucky v. Graham,* 473 U.S. 159, 165–67, 105 S.Ct. 3099, 3104–06, 87 L.Ed.2d 114 (1985). Regardless of the entity named as the defendant, the Eleventh Amendment bars retroactive damage awards that must be paid by the state. *Parker v. Williams,* 862 F.2d 1471, 1475 (11th Cir. 1989).

■ Official capacity actions for prospective relief, however, are not treated as actions against the state. *Kentucky v. Graham,* 473 U.S. at 167 n. 14, 105 S.Ct. at 3106 n. 14; *Ex parte Young,* 209 U.S. 123, 156, 28 S.Ct. 441, 452, 52 L.Ed. 714 (1908). The Eleventh Amendment does not insulate official capacity defendants from actions seeking prospective injunctive relief. *See Wu v. Thomas,* 863 F.2d 1543, 1550 (11th Cir.1989); *Parker v. Williams,* 862 F.2d at 1475.

■ In his complaint, Lassiter sought reinstatement as well as damages. To the extent that he still seeks the prospective relief of reinstatement, his claim against Covington in his official capacity is not barred by the Eleventh Amendment.

### Breach of Contract

Lassiter's pendent state law breach of contract claim was asserted against all named defendants. This claim is based on allegations that Lassiter had an employment contract with Alabama A & M, and that he is entitled to relief for the breach of that contract. Because Lassiter does not claim to have had a contract with any of the individual defendants, judgment for the individual capacity defendants was proper. *See Cannon v. Jefferson County Committee for Economic Opportunity, Inc.,* 599 So.2d 32, 35 (Ala. 1992).

Since the Eleventh Amendment bars this action against the Board of Trustees, and, to the extent that Lassiter seeks retroactive relief against Covington in his official capacity, the district court properly granted judgment for the defendants on Lassiter's breach of contract claim, with the exception of any claim Lassiter may have for prospective relief against Covington in his official capacity.

### Property Interest

Lassiter asserts two independent bases for his property interest claim. *First,* he contends that the contract he signed when he was hired by Alabama A & M was still in effect at the time of his termination, giving him an expectation of continued employment. *Second,* Lassiter contends that Alabama A & M's personnel policy manual provided him with an expectation of continued employment by restricting Alabama A & M's right to exercise its ability to terminate the employment relationship. The district court granted judgment as a matter of law for the individual capacity defendants on both of these claims, holding that the qualified immunity doctrine shields the defendants from liability.

■ The test for determining whether a public official can claim qualified immunity was established by the Supreme Court in *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). "[G]overnment

officials ... generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818, 102 S.Ct. at 2738. The official's conduct is evaluated under an objective, reasonable official standard. *Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987). The individual capacity defendants are shielded from personal liability for conduct that is within the discretion conferred by their employment, unless the legal norms allegedly violated were clearly established at the time of the challenged actions. *Dartland v. Metropolitan Dade County,* 866 F.2d 1321–22 (11th Cir.1989), citing *Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).

### Property Interest Based on Employment Contract

 The trial court found that qualified immunity applied to the contract formulation of the property interest claim because there was conflicting evidence concerning the length of the contract. Since the contract was ambiguous, the court reasoned, it was not clearly established that the contract created a property interest. This decision reflects a misunderstanding of qualified immunity. Qualified immunity turns on ambiguity in the law, not ambiguity in the contract. If the law is clear, but there are issues of fact concerning the contract, then a defendant is not immune from having a jury resolve the factual issues concerning the contract.

In 1986, the law was clear that an employee with a contractual expectation of continued employment had a property interest in that employment. *Board of Regents v. Roth,* 408 U.S. 564, 577–78, 92 S.Ct. 2701, 2709–10, 33 L.Ed.2d 548 (1972). Because the law was clearly established, the qualified immunity doctrine cannot shield the individual capacity defendants from suit. Their assertion that the contract is unclear is relevant only to Lassiter's ability to prove his claim. An uncertainty in the facts does not give rise to qualified immunity.

We found in *Lassiter I* that the contract was ambiguous, creating an uncertainty as to whether the parties intended the contract to end in September 1985 or September 1986. As we stated in *Lassiter I,* this ambiguity must be resolved by the jury. If the jury decides that the contract was effective through September 1986, then Lassiter had a clearly established property interest in continued employment, which could not be terminated without due process. If, on the other hand, the jury finds that the contract expired in September 1985, then Lassiter would be unable to prove the existence of a due process right grounded in the contract.

### Property Interest Based on Personnel Policy Manual

 As an additional basis for his property interest claim, Lassiter asserts that he had a property interest by virtue of Alabama A & M's personnel policy manual. As we discussed in *Lassiter I,* even if Lassiter's contract expired in September 1985, the personnel policy manual issued by Alabama A & M may have created a property interest in continued employment. 861 F.2d at 683–84. In *Lassiter I,* we held that summary judgment was not appropriate because genuine issues of material fact remained concerning the three-prong test set forth in *Hoffman–La Roche, Inc. v. Campbell,* 512 So.2d 725, 735 (Ala.1987), for determining whether the personnel policy gave rise to a binding contract. On remand, the district court found that the individual capacity defendants were entitled to qualified immunity from this claim on the ground that Alabama law in 1986, prior to *Hoffman–La Roche,* was unclear on whether a property interest could arise from a personnel policy.

This argument was not made on the prior appeal, and fails to recognize that *Hoffman–La Roche* extended the contract-personnel policy principle to private employers, and that the law as to public employers had been earlier established in Alabama. *See, e.g., United Steelworkers of America v. University of Alabama,* 599 F.2d 56, 60 (5th Cir.1979) (an employee's interest in a benefit may create a property interest for due process purposes); *Belcher v. Jefferson County Bd. of Education,* 474 So.2d 1063, 1068 (Ala.1985) (board of education is legally bound to com-

ply with its adopted policies and grievances procedures).

Although the appellees' brief concedes that *Lassiter I* "correctly decided that such 'Hoffman–La Roche' contracts, when proven, serve to confer property interests," it argues there are no cases that established such law before the events in issue here, apparently discounting the cases cited above. To the citation of *Belcher,* the brief makes the specious argument that *Belcher* was concerned with primary and secondary schools and did not apply to institutions of higher education like Alabama A & M. This argument overlooks the *Belcher* court's reliance on *DeStafney v. University of Alabama,* 413 So.2d 391 (Ala.1981), in connection with its immunity discussion, and on *Vitarelli v. Seaton,* 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959), a case involving a federal non-school public employee, for the substantive decision. Counsel has argued no principled reason why the decisions in these cases would not be applicable to Alabama university employees. Whether the adoption of policies is mandated or voluntary is of no consequence when the rationale of the decision is that once such a policy is adopted, it has to be followed. Subsequently the Alabama Supreme Court has cited without distinction the *Belcher* case in a suit involving the University of South Alabama. *Breazeale v. Bd. of Trustees of S. Ala.,* 575 So.2d 1126 (Ala.Civ.App.1991).

Of course, if *Belcher* did not establish the law in this regard, because the case did not involve an Alabama university, neither did *Hoffman–La Roche,* because that case did not even involve a public employer. Yet both the trial court and the appellees concede the applicability of that case.

The district court also based its qualified immunity decision on what it referred to as the incomplete and haphazard form of the policies, making it "far from clear that the personnel policies grant to Mr. Lassiter ... a right to have a hearing on his discharge." As with the contract issue, the law being clear, this presents a jury question that goes to the plaintiff's ability to prove the claim. A factual dispute over the meaning of the policy cannot be used to create a qualified immunity defense when the law is certain.

*Liberty Interest*

█ The district court found that the individual capacity defendants were entitled to qualified immunity from Lassiter's liberty interest claim because it was not clearly established at the time of the relevant conduct that the defendants' actions would give rise to a liberty interest claim. As "an issue of first impression in this circuit," this Court in 1989 considered "whether the presence of stigmatizing information placed in both the public employee's personnel file and the public record ... constitutes sufficient publication to implicate the liberty interest under the due process clause of the fourteenth amendment." *Buxton v. City of Plant City, Fla.,* 871 F.2d 1037, 1042 (11th Cir.1989). Lassiter has not cited any cases indicating that the *Buxton* Court was incorrect in characterizing the issue as one of first impression or that Alabama law had been clear before *Buxton* was decided. Common sense dictates that if the issue was one of first impression in 1989, then the law could not have been clearly established in 1986. Accordingly, the district court properly found that the individual capacity defendants were entitled to qualified immunity from Lassiter's liberty interest claim.

█ In the alternative, the district court ruled that the defendants were entitled to judgment on the liberty interest claim because Lassiter, after a full opportunity at trial, failed to offer sufficient evidence of stigmatizing public charges. Lassiter now argues that the trial court's evidentiary rulings prevented him from proving that the charges were stigmatizing, but he does not assert, nor do we find, that the district court's rulings amount to an abuse of discretion. Since this holding appears to be supported by the record, the district court denial of relief as to the merits of the liberty interest claim also supports the judgment for defendants.

*Conclusion*

To summarize, we hold that all claims against the Board of Trustees as an entity and all claims for retroactive relief against

Covington in his official capacity were barred by the Eleventh Amendment. We further find that the individual capacity defendants were entitled to judgment as a matter of law on the merits of the liberty interest claim. Finally, we hold that judgment as a matter of law on Lassiter's property interest claims was not warranted, and that a jury should decide those claims.

AFFIRMED in part, REVERSED in part, and REMANDED.